IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WENDY L. MOWDY,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | 6:15-cv-1871-JO<br><br>OPINION AND ORDER |

JONES, J.,

  Plaintiff Wendy Mowdy appeals the Commissioner's decision to deny her application for supplemental security income under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

  Mowdy alleged disability beginning in April 2003 due to degenerative disc disease of the lumbar region of the spine, bilateral carpal tunnel syndrome, ulnar neuropathy, right medial epicondylitis, asthma, obesity, major depression, generalized anxiety disorder, panic disorder, posttraumatic stress disorder (PTSD), and personality disorder. Admin. R. 13. The ALJ applied the sequential disability determination process set forth in the regulations and described in *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found that Mowdy's impairments adversely affected

1 - OPINION AND ORDER

her ability to perform basic work activities. Admin. R. 13-14. He found that, despite her impairments, Mowdy retained the residual functional capacity (RFC) to perform a range of light work involving limited reaching, crawling, and climbing, provided she had the option to change between sitting and standing. The ALJ found Mowdy's mental impairments limited her to unskilled work involving only simple job-related decisions, only occasional interactions with others, and few workplace changes. In addition, the ALJ found Mowdy could not perform fast paced, production type work. Admin. R. 16.

The vocational expert (VE) testified that a person having Mowdy's RFC and vocational factors would be able to perform light unskilled occupations such as photocopy machine operator, hand packager, and electronics worker, which represent over 200,000 jobs in the national economy. Admin. R. 23, 64. The ALJ concluded that Mowdy was not disabled within the meaning of the Social Security Act. Admin. R. 23.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence may be less than a preponderance of the evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the evidence even if another interpretation is also

rational. *Robbins*, 466 F.3d at 882; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

## ASSIGNMENTS OF ERROR

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Mowdy contends the ALJ failed to give sufficient weight to the opinion of Wayne Taubenfeld, Ph.D., and failed to credit the lay witness statements submitted by her friends. Mowdy argues that these errors led the ALJ to assess her RFC in a manner that did not accurately reflect all of her functional limitations and to elicit testimony from the vocational expert based on faulty hypothetical assumptions.

## DISCUSSION

### I.   Dr. Taubenfeld's Opinion

In November 2011, Dr. Taubenfeld evaluated Mowdy with a clinical interview, standardized tests of intelligence, achievement, and memory, and inventories of subjective depression and anxiety symptoms. Admin. R. 304. Mowdy's test scores were in the low average range for intellectual functioning and academic achievement. She scored in the average range for memory functioning. On tests of attention, Mowdy scored in the average range with a "good ability at tasks that require a great deal of attention." Admin. R. 311. On a multiaxial inventory of emotional functioning, Mowdy answered in a manner that suggested a personality disorder with negativistic traits, major depression, and a generalized anxiety disorder. Admin. R. 312. On the Beck inventories, Mowdy's responses suggested mild depression and moderate anxiety. Admin. R. 314.

Dr. Taubenfeld opined that Mowdy's emotional and social functioning presented greater barriers to employment than her level of intellectual functioning. Admin. R. 315. Dr. Taubenfeld

3 - OPINION AND ORDER

said that people with the personality type suggested by Mowdy's responses generally are not suited for fast paced work with time pressure and have limited social ability to interact appropriately with coworkers, supervisors and members of the public. Dr. Taubenfeld said people with negativistic traits are not good team players and would benefit from flexible scheduling to accommodate a tendency to be late. Admin. R. 317.

The ALJ gave Dr. Taubenfeld's opinion significant weight and incorporated much of it into his RFC assessment by precluding fast paced work, limiting work that requires frequent interactions with others, and including only unskilled work involving simple decision making and few workplace changes. Admin. R. 16, 21. Thus, the ALJ's RFC assessment reasonably accounted for most of the limitations in Dr. Taubenfeld's opinion. The ALJ acknowledged that Mowdy might not be able to work well on a team, but discounted the opinion to the extent it suggested she could not, at least on an occasional basis, engage in appropriate interactions at work. The ALJ also discounted Dr. Taubenfeld's opinion to the extent it suggested that Mowdy would not be able to get to work on time within normal tolerances.

An ALJ may discount an examining physician's opinion if the ALJ offers a clear, specific and legitimate explanation based on findings supported by substantial evidence in the record as a whole. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

Here the ALJ gave lesser weight to some of Dr. Taubenfeld's conclusions which were too general and nonspecific to be useful in formulating vocational limitations. Admin. R. 21. For example, Dr. Taubenfeld's opinion did not specify how the suggested tendency to be late would manifest itself in terms of frequency and degree of lateness. In addition, Dr. Taubenfeld's opinion

4 - OPINION AND ORDER

does not indicate the likelihood that a person with Mowdy's scoring pattern would demonstrate a tendency to be late. With such a vaguely defined limitation, Dr. Taubenfeld's opinion does not show how Mowdy's test scores suggesting negativistic personality traits translated into a specific functional limitation that would preclude her from performing a specific work-related activity. The ALJ reasonably concluded that the nonspecific conclusion failed to establish a functional limitation that could be included in Mowdy's RFC. Other examples of vagueness in Dr. Taubenfeld's opinion suggest uncertainty on his part, including his opinion that Mowdy "may have difficulties getting along" with people and "might react to supervision that is rigid and hostile." Admin. R. 317. The ALJ properly relied on other evidence regarding Mowdy's ability to comply with a schedule and interact with others and gave diminished weight to Dr. Taubenfeld's uncertain, nonspecific limitations.

The ALJ found Dr. Taubenfeld's opinion of Mowdy's social limitations inconsistent with other evidence in the record. For example, an investigation by the Cooperative Disability Investigations Unit found ample evidence that Mowdy was very social in her apartment complex and her living arrangements, contrary to Dr. Taubenfeld's conclusion that she would have difficulty interacting appropriately with others. Admin. R. 346-349. The ALJ properly relied on this, Mowdy's reported daily activities, and her work history to conclude that she was not as limited in her social functioning as Dr. Taubenfeld suggested. Admin. R. 22.

In addition, the ALJ gave great weight to the opinions of Robert Henry, Ph.D. and Paul Rethinger, Ph.D., who are agency disability experts. Admin. R. 21. They reviewed the entire record, including Dr. Taubenfeld's report, and offered expert opinions regarding Mowdy's mental impairments and functional limitations. In July 2012, Dr. Henry found Mowdy's ability to conform

to a schedule within normal tolerances not significantly limited. Admin. R. 78. He found the record supported an RFC limited to simple routine tasks, but found no support for social limitations. Admin. R. 74. In December 2012, Dr. Rethinger reviewed the entire record again and found evidence of mild difficulties in maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace. Admin. R. 89. In terms of Mowdy's functional capacity, Dr. Rethinger found neither her ability to conform to a normal work schedule nor her ability to engage appropriately in social interactions significantly limited. Admin. R. 90-91.

An ALJ may not rely solely on the opinion of a non-examining physician to reject an examining or treating physician's opinion. The opinions of non-examining sources may constitute substantial evidence, however, when consistent with the record as a whole. *Tonapetyan*, 242 F. 3d at 1149. An ALJ may give greater weight to the opinions of non-examining physician when the examining physician's opinion relies largely on the subjective complaints of the plaintiff. *Tonapetyan*, 242 F. 3d at 1149. Here, Dr. Taubenfeld appeared to rely on Mowdy's subjective reporting, while the opinions of Dr. Henry and Dr. Rethinger were more consistent with the record as a whole. I find no error in the ALJ's evaluation of Dr. Taubenfeld's opinion.

## II.  **Lay Witness Statements**

Mowdy next contends the ALJ improperly evaluated two lay witness statements. In one undated statement, signed by Mowdy's brother-in-law David Archer, Mr. Archer said Mowdy sporadically had "violent outbreaks" without apparent reason. He said that during these episodes, which would happen "constantly out of the blue," Mowdy would throw objects and threaten people. Admin. R. 241. In the other lay witness statement, Mowdy's boyfriend James Harris said that Mowdy had difficulty comprehending and retaining reading material and had an extremely bad

temper with bouts of violent behavior. Admin. R. 242. The ALJ considered these statements and gave them some weight in his decision, but found that the record did not support the level of impairment they suggested. Admin. R. 21-22.

An ALJ must consider the statements of a lay witness, but may discount them for reasons germane to the witness. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ's reasons must be supported by substantial evidence, but may appear anywhere in the decision without being tied directly to the evaluation of the lay witness statement. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ identified evidence that contradicted the lay witness statements. For example, Mr. Harris's statement that Mowdy could not comprehend or retain reading material was contradicted by Dr. Taubenfeld's objective testing which showed her intellectual functioning in the low average range and her memory a relative strength. Admin. R. 21. Other medical reports showed that Mowdy "was friendly and cooperative during the interview;" "her thought process was logical and goal-directed", and that she was alert and able to fully concentrate. Admin. R. 431. The CDIU report included statements from Mowdy's neighbors who said she was friendly and social, with a tendency to use inappropriate language in casual social settings, but no mention of violent outbursts. Admin. R. 347. This evidence directly contradicts the lay witness statement that she experienced constant uncontrollable outbursts and rationally supports the ALJ's conclusion that the lay witnesses overstated the level of Mowdy's impairment.

The lay witness statements adopted limitations Mowdy described in her own subjective complaints. Accordingly, the lay witness statements are susceptible to the same reasoning the ALJ provided in discounting Mowdy's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1117-18 (9th

7 - OPINION AND ORDER

Cir. 2012) (ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to lay witness testimony describing the same limitations). The ALJ discounted Mowdy's credibility for well supported reasons, including that she made numerous contradictory statements about her symptoms, the medical evidence did not support the debilitating symptoms she claimed, her treatment record did not show significant treatment for mental health or behavioral issues, the reports of neighbors did not support her claimed symptoms, and she and her boyfriend filed contemporaneous disability applications based on the same medical conditions. Admin. R. 17-19. Notably, Mowdy does not challenge the adverse credibility determination and the ALJ's reasoning provides an adequate basis for discounting the lay witness statements. *Valentine*, 574 F.3d at 694; *Lewis*, 236 F.3d at 512.

### III. Remaining Contentions

Mowdy contends the ALJ elicited testimony from the VE based on hypothetical assumptions that did not accurately reflect her functional limitations. The ALJ elicited the VE's testimony with hypothetical assumptions that accurately reflected his assessment of Mowdy's RFC. Admin. R. 23, 62-64. The ALJ was not required to include the additional hypothetical limitations suggested by Mowdy's counsel which the ALJ found unsupported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The VE testified that jobs exist in the national economy that a person with Mowdy's RFC could perform. Admin. R. 64. Because I find no error in the ALJ's RFC assessment, the hypothetical limitations posed to the VE were also free of error, and the VE's testimony satisfied the Commissioner's burden to show there are jobs that Mowdy can perform. *Andrews v. Shalala*, 53 F.3d at 1043.

Case 6:15-cv-01871-JO    Document 13    Filed 01/04/17    Page 9 of 9

## CONCLUSION

Based on the foregoing, Mowdy's claims of error cannot be sustained and the Commissioner's decision is AFFIRMED.

DATED this 4ᵗʰ day of January, 2017.

_____
Robert E. Jones, Senior Judge
United States District Court

9 - OPINION AND ORDER